UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

REGINA RENEE VANCE,                      )
                                         )
                    Plaintiff,           )        Case No. 1:17-cv-723
                                         )
v.                                       )        Honorable Janet T. Neff
                                         )
COMMISSIONER OF                          )
SOCIAL SECURITY,                         )
                                         )
                    Defendant.           )
—————————————————————————)

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. § 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to Supplemental Security Income (SSI) benefits. On April 13, 2016, plaintiff filed her application for SSI benefits. Plaintiff alleged a June 11, 2013, onset of disability. (ECF No. 8-6, PageID.309). Plaintiff's claim was denied on initial review. (ECF No. 8-5, PageID.224-28). On February 21, 2017, she received a hearing before an ALJ. (ECF No. 8-2, PageID.71-107). On March 28, 2017, the ALJ issued his decision finding that plaintiff was not disabled. (Op., ECF No. 8-2, Page ID.47-62). On June 8, 2017, the Appeals Council denied review (ECF No. 8-2, PageID.33-35), and the ALJ's decision became the Commissioner's final decision.

Plaintiff timely filed her complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following ground: "The ALJ's RFC determination is not

supported by substantial evidence." (Plf. Brief at 1, ECF No. 12, PageID.977). For the reasons stated herein, I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v.*

*Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 13, 2016, the date she filed her application.[1]  (Op. at 3, ECF No. 8-2, PageID.49).  Plaintiff had the following severe impairments:  "degenerative disc disease of the cervical and lumbar spine; fibromyalgia; obesity; and depression." (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listing impairment.  (*Id.* at 4, PageID.50).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work with the following exceptions:

> She cannot use the left upper extremity to reach overhead and cannot use the left upper extremity to push and/or pull more than occasionally. She cannot use the left upper extremity to handle/grip or finger/grasp items more than occasionally.  She cannot use the left upper extremity to handle/grip or finger/grasp items more than frequently; she cannot use the right upper extremity to handle, finger, or feel items more than

---

[1] The ALJ noted that this was plaintiff's fourth application for SSI benefits and provided a brief summary of the decisions denying plaintiff's earlier claims. (Op. at 1, ECF No. 8-2, PageID.47).

frequently. She must avoid concentrated exposure to vibration. She must avoid concentrated exposure to respiratory irritants (dusts, fumes, odors, gasses, poorly ventilated areas, etc.). She is also limited to performing one or two-step tasks which are simple, routine, and repetitive in nature and involve no more than simple work-related decisions, no more than few workplace changes, and no transactional or tandem asks. She cannot perform tasks that require fast paced production. She cannot maintain more than occasional interaction with the general public or co-workers; and she requires isolated work with occasional supervision.

(Op. at 6, ECF No. 8-2, PageID.52). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (*Id.* at 6-14, PageID.52-60). Plaintiff could not perform any past relevant work. (*Id.* at 14, PageID.60).

The ALJ considered the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the VE testified that there were approximately 348,000 jobs that exist in the national economy that hypothetical person would be capable of performing. (ECF No. 8-2, PageID.101-02). The ALJ found that this constituted a significant number of jobs and found that plaintiff was not disabled. (Op. at 15-16, ECF No. 8-2, PageID.61-62).

## 1.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (Plf. Brief at 9-15, ECF No. 12, PageID.985-91; Reply Brief at 1-4, ECF No. 14, PageID.1009-13).

RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2); *see Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). While the RFC determination is made by the ALJ, an ALJ's RFC

determination must be supported by substantial evidence. *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012).

Among other things, the ALJ considered the findings made regarding plaintiff's RFC in the then most recent prior decision denying plaintiff's application for SSI benefits. (Op. at 13, ECF No. 8-2, PageID.59). On February 28, 2014, the earlier ALJ found that plaintiff retained the RFC for a limited range of light work. (ECF No. 8-3, PageID.160). Here, the ALJ found updated medical evidence showed that after the February 2014 decision plaintiff developed a right hand impairment.[2] It necessitated "a slightly different finding with respect to the [plaintiff's] residual functional capacity." (Op. at 7, ECF No. 8-2, PageID.53).

The ALJ's factual finding that plaintiff retained the RFC for a limited range of light work is supported by substantial evidence.

---

[2] Plaintiff was involved in a fight in 2016. She broke her right little finger and it was "surgically repaired with screws and a rod." (Op. at 7, ECF No. 8-2, PageID.53; *see* ECF No. 8-2, PageID.82, 88; ECF No. 8-12, PageID.625-28; ECF No. 8-13, PageID.683; ECF No. 8-14, PageID.725; ECF No. 8-15, PageID.864, 866-68, 875).

**2.**

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of a treating physician, James Hudson, M.D.  Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent ... with the other substantial evidence in the case record.' " *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d at 376.

The ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773.  An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990*); see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802,

-6-

804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *see also Perry v. Commissioner*, No. 17-4182, __ F. App'x __, 2018 WL 2470915, at *3 (6th Cir. June 4, 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]' ") (quoting *Biestek v. Commissioner*, 880 F.3d 778, 785 (6th Cir. 2017)).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007*); see Gayheart v. Commissioner*, 710 F.3d at 376; *Cole v. Astrue*, 661 F.3d at 937-38; *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart v. Commissioner*, 710 F.3d at 376. This procedural requirement exists, in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are

telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see also Gayheart v. Commissioner*, 710 F.3d at 376 ("This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.' " (quoting *Wilson v. Commissioner*, 378 F.3d at 544)).

On November 2, 2016, Dr. Hudson completed a physical capacity assessment questionnaire. (ECF No. 8-14, PageID.786-87). The ALJ gave partial weight to Dr. Hudson's opinions. The ALJ noted that Dr. Hudson is a general practitioner. His opinion that plaintiff was able to lift twenty pounds occasionally and ten pounds frequently was consistent with other record evidence. But Dr. Hudson cited no objective medical evidence supporting his opinion that plaintiff would only be able to "stand/walk for a total of only two hours in an eight-hour workday." (Op. at 13, ECF No. 8-2, PageID.59). Diagnostic testing of plaintiff's lumbar spine "revealed only mild findings and the only diagnostic testing of [plaintiff's] left knee mention[ed] in the record was entirely normal." (*Id.*). Dr. Hudson's last treatment note before answering the questionnaire indicated that plaintiff's left knee revealed no evidence of effusion, swelling, warmth and there was no pedal edema in either lower extremity. Straight leg raising tests were negative for radicular pain. Plaintiff had reported increased pain in her neck, low back, and left knee stemming from her then recent motor vehicle accident. Dr. Hudson "specifically stated that [plaintiff's] exam did not reveal any neurological deficits that would indicate the need for more acute intervention other than possibly injections in her knee for physical therapy and to

'stay active.'" (*Id.*) (citing Exhibit E10f/pp. 10-12, found at ECF No. 8-14, PageID.731-33).

Plaintiff's argument that the ALJ committed error by focusing on the treatment of plaintiff's knee and failing to observe that Dr. Hudson's questionnaire responses were based "solely on a diagnosis of lumbar radiculopathy" (Plf. Brief at 11, ECF No. 12, PageID.987) is not persuasive. The fact that the only entry in the questionnaire space provided for a diagnosis was "lumbar radiculopathy" (ECF No. 8-14, PageID.786) is a good illustration why ALJs are not bound by conclusory statements of doctors where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton v. Halter*, 246 F.3d at 773; *see also Ellars v. Commissioner*, 647 F. App'x 563, 566-67 (6th Cir. 2016). "'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'" *Bayes v. Berryhill*, No. 3:16-cv-2822, 2018 WL 791323, at *2 (N.D. Ohio Feb. 8, 2018) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); *see Ashley v. Commissioner*, No. 1:12-cv-1287, 2014 WL 1052357, at *8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]"); *see also Nicholas v. Berryhill*, No. 16-14072, 2018 WL 2181463, at *3 (E.D. Mich. Jan. 25, 2018) ("Courts in this circuit have held that a medical source statement in 'check-the-box' format, by itself, provides little to no persuasive value — to hold otherwise would neglect its glaring lack of narrative analysis.") (citation and quotation omitted).

-9-

The ALJ considered the medical evidence regarding plaintiff's back impairment.  Although plaintiff had some degenerative changes, the medical evidence did not document any significantly decreased range of motion of plaintiff's lumbar or cervical spine.  There was "no objective evidence of significant muscle weakness or atrophy, nor evidence of any spinal related-motor, reflex, sensory or neurological deficits.  [Plaintiff had] never undergone surgery to her spine, nor ha[d] such ever been assessed necessary by any treating or examining medical source." (Op. at 10, ECF No. 8-2, PageID.56).  Assuming the proffered restrictions were based on plaintiff's back impairment the ALJ reasonably found that they were not persuasive because diagnostic testing had revealed only "mild findings."  (*Id.* at 13, PageID.59).

On November 2, 2016, Dr. Hudson also completed a mental capacity questionnaire.  (ECF No. 8-15, PageID.791-93).  The ALJ gave little weight to Dr. Hudson's opinions regarding plaintiff's mental limitations because they appeared to be based on plaintiff's subjective reports.  (Op. at 13, PageID.59).  The ALJ noted that Dr. Hudson suggested that plaintiff had "marked limitation of her abilities to maintain attention/concentration for extended periods of time, sustain an ordinary routine without special supervision, perform activities within a schedule, and work in coordination with others without being distracted, as well as an extreme limitation of her ability to perform at a consistent pace."  (*Id.*).  "Dr. Hudson is not a psychologist or psychiatrist."  (*Id.*).  The ALJ found that his questionnaire responses were "not supported by the objective medical evidence showing that, despite the claimant's

-10-

reports of fluctuating emotional symptoms and irritability/anger issues, the overall record clearly show[ed] that her mood ha[d] generally remained relatively stable when she reported medication compliance." (*Id.* at 13-14, PageID.59-60).

I find no violation of the treating physician rule. I also find that the ALJ satisfied the procedural requirement of providing good reasons for the weight that he gave to Dr. Hudson's opinions.

**3.**

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of Dr. James Findley, a consultative examiner. (Plf. Brief at 14-15, ECF No. 12, PageID.990-91; Reply Brief at 3-4, ECF No. 14, PageID.1011-12).

The opinions of a consultative examiner are not entitled to any particular weight. *See Peterson v. Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ was not " 'under any special obligation to defer to [a consultative examiner's] opinion[s] or to explain why he elected not to defer to [them].' " *Roach v. Commissioner*, No. 1:15-cv-794, 2016 WL 4150650, at *5 (W.D. Mich. Aug. 5, 2016) (quoting *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011)). Plaintiff's burden on appeal is much higher than identifying pieces of evidence on which the ALJ could have made a factual finding in her favor. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ. *See Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003). The ALJ is responsible for weighing

psychological opinions.  *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).

The ALJ noted that plaintiff received mental health treatment at Pine Rest Community Services from February through July 2016.  (Op. at 11, ECF No. 8-2, PageID.57; *see* ECF No. 8-15, PageID.794-849).  Plaintiff related that she was not currently using any psychotropic medication.  She acknowledged her continued sporadic use of cocaine and marijuana.  (Op. at 11, ECF No. 8-2, PageID.57).  Her thought processes were linear and logical.  (*Id.*).  Plaintiff received prescriptions for Latuda, Vistaril, and melatonin.  She was directed to avoid using marijuana or cocaine.  (*Id.*; *see* ECF No. 8-15, PageID.831).  Pine Rest care providers offered a diagnosis of a schizoaffective disorder, post-traumatic stress disorder, and severe substance abuse disorders involving cannabis and cocaine.  (Op. at 11, ECF No. 8-2, PageID.57; *see* ECF No. 8-15, PageID.799, 803, 807, 810-11, 815, 819, 823, 830, 839, 847).

Plaintiff began receiving counseling sessions at Hope Network Behavioral Health in July 2016.  (Op. at 11-12, ECF No. 8-2, PageID.57-58; *see* ECF No. 8-14, PageID.746-69; ECF No. 8-16, PageID.878-950; ECF No. 8-17, PageID.952-70).  On August 22, 2016, plaintiff "denied the use of crack for the last two or three weeks and denied recent use of marijuana[.]"  (Op. at 11, ECF No. 8-2, PageID.57; *see* ECF No.

-12-

8-14, PageID.752).   On the same date, Physician's Assistant P. Handlin offered a diagnosis of a major depressive disorder, recurrent and severe, a mild cannabis use disorder, and an unspecified personality disorder.  He strongly encouraged plaintiff to abstain from alcohol and marijuana.  He insisted that plaintiff not use cocaine, crack cocaine, or any other stimulant medications because they posed a risk of acute psychotic symptoms and mania.  (Op. at 11, ECF No. 8-2, PageID.57; *see* ECF No. 8-14, PageID.755).   Plaintiff "was referred for counseling and case management services, which was to assist [her] with finding permanent housing, providing reminders to attend appointments, and securing financial stability."  (Op. at 11, ECF No. 8-2, PageID.57).

The ALJ observed that plaintiff's counseling sessions indicated that she "generally presented as cooperative and in contact with reality, exhibiting generally coherent and goal directed responses and logical thought processes."  (*Id.* at 12, PageID.58).  Similarly, when plaintiff sought treatment for physical health concerns, she generally presented for medical visits as cooperative with appropriate mood and affect.  There were "no annotations that she exhibited evidence of significant hostility, tangentiality, or unusual behavior or mannerisms.  The overall record [was] simply not reflective of psychological symptoms experienced by the plaintiff to a debilitating degree, as would be suggested by a history of repeated hospitalizations for mental health treatment."  (*Id.*).

It was against this backdrop that the ALJ considered the July 8, 2006, mental status evaluation performed by Dr. Findley.   (ECF No. 8-14, PageID.738-42).

Plaintiff had no history of inpatient psychiatric hospitalizations. She reported that she was seeing a psychiatrist for monthly medication reviews. (*Id.* at PageID.739). She denied any significant substance abuse, although she acknowledged that she 'smoke[d] weed' daily to help manage her pain and anxiety." (ECF No. 8-14, PageID.739). Dr. Findley found no evidence of any thought disorder or other psychotic process. But plaintiff's "rantings about the rejection and mistreatment she [felt] she ha[d] experienced in her life" had a "paranoid flavor." (*Id.* at PageID.741). Plaintiff "complained of vague but recurring suicidal and homicidal ideations." (*Id.*). Dr. Findley offered a diagnosis of "Bipolar I Disorder, severe, m.r.e. depressed" and "Other Specified Personality Disorder (Cluster B traits)." (*Id.*). He gave plaintiff a poor prognosis based on the "severity and intransigent nature of her emotional disturbances and her underlying personality disorder." (*Id.*). He offered opinions that plaintiff would be capable of understanding simple instructions, but would have difficulty carrying our even routine and repetitive tasks on a sustained basis and would likely encounter difficulty in any situations involving interpersonal activities. (*Id.* at 741-42).

The ALJ gave partial weight to Dr. Findley's opinions. (Op. at 12-13, PageID.58-59). He gave weight to Dr. Findley's opinion that plaintiff was capable of understanding simple instructions. He found, however, that other suggested restrictions were vague and not adequately supported. Dr. Findley's indication that he believed that plaintiff would have difficulty carrying out routine and repetitive tasks consistently was "vague and not supported by the other evidence of record,

-14-

notably, [plaintiff's] work history, which [] included the performance and execution of routine, repetitive tasks." (*Id.* at 13, PageID.59). Plaintiff's socialization problems had been factored into the RFC limiting plaintiff to performing work involving no more than occasional interaction with the general public or co-workers, that was isolated and involved only occasional supervision. (*Id.*).

I find no basis for disturbing the Commissioner's decision based on the weight the ALJ gave to Dr. Findley's opinions.

**4.**

Plaintiff attempts to raise a new issue in her reply brief that the ALJ failed to develop the record when he gave weight to some of Dr. Findley's opinions and rejected others. (Reply Brief at 3-4, ECF No. 14, PageID.1011-12). The proposed issue is waived on multiple levels. It is waived because it does not appear in plaintiff's statement of errors. *See Ealy v. Commissioner*, 594 F.3d 504, 513 (6th Cir. 2010); *Toll v. Commissioner*, No. 1:16-cv-705, 2017 WL 1017821, at *3 (W.D. Mich. Mar. 16, 2017). Further, it is waived because a reply brief is not the proper place to raise new arguments. *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (*en banc*) (" 'We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.' ") (quoting *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)).

Even assuming that this issue had not been waived, it is meritless. The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because she was represented by an attorney at the hearing. *See Smith v. Commissioner*, 473

-15-

F. App'x 443, 445 (6th Cir. 2012).  Plaintiff bears the ultimate burden of producing sufficient evidence to show that she is disabled.  *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Montecalvo v. Commissioner*, 695 F. App'x. 124, 127 (6th Cir. 2017) (The plaintiff's burden "includes supplying medical evidence that substantiates the claim of disability.").

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: July 18, 2018                    /s/  Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).

-16-